[Civ. No. 7754. Second Appellate District, Division Two.—June 8, 1933.]

KATIE KECK, Respondent, v. JEFF G. WINGERT et al., Appellants.

Walter F. Haas and Frank F. Oster for Appellants.

W. H. Gregory, Fred II. Luth and Ames Peterson for Respondent.

ARCHBALD, J., *pro tem.*—Action by plaintiff to recover from defendants an alleged secret commission claimed to have been obtained by them in acting as agents for plaintiff in the leasing of certain prospective oil lands. From a judgment rendered against them defendants have appealed.

The contentions of appellants are many, but we think the material ones may well be summed up and considered as a claim that the findings are not supported by the evidence.

The findings state in substance that plaintiff was the owner of certain lands adjacent to the Santa Fe Springs oil-field; that defendant Wingert was an attorney and defendant Koon a licensed real estate broker; that Wingert and Koon entered into an agreement, which was in effect at all times mentioned, wherein and whereby Koon agreed to open up and operate a real estate and insurance office, to keep an itemized account of all operations and furnish Wingert with a monthly statement of such operations, and after deducting operating expenses the net profits were to be divided equally between the two; that Wingert on his part was to pay to Koon $150 on the first day of each and every month; that plaintiff had no knowledge of such agreement; that Wingert was at all times mentioned in the complaint employed by plaintiff as her attorney; that on or about July 10, 1928, "for the purpose of secretly and without the knowledge of the plaintiff securing the right to sell or lease her property", and for the further purpose of "secretly and without plaintiff's knowledge, deriving a financial benefit through such handling of her property and sharing such financial benefit" with Koon, Wingert introduced the latter to plaintiff and "represented to her that he was a reliable real estate broker and one to whom she should [*sic*] entrust the handling of said property", and that he, Wingert, would act as her legal adviser in all matters handled by Koon; that relying upon said representations plaintiff employed Koon to represent her "in the matter of any sale or lease" of said property; that she

"promised to pay" Koon, "as compensation . . . for any sale or lease thereof" a commission of five per cent, and that the latter agreed to accept the same as compensation for his services; that during the months of August, September and October of 1928 defendants, acting through Koon, represented to plaintiff that it was necessary for her to execute and deliver to Koon various instruments for the purpose of showing to prospective lessees that he was authorized to execute a lease for said property; that believing such representations to be true and relying thereon, "the plaintiff executed and delivered to said defendant Koon, but only for the purpose aforesaid, various instruments, which said instruments, however, in fact, purported to give to said defendant Koon an option to lease said property for his own use"; that on or about October 3, 1928, "with intent to deceive and defraud" plaintiff, and to enable defendants "secretly to derive a financial benefit at the expense and to the detriment of plaintiff", the defendants, acting through Koon, represented that the latter had secured a lessee for said property, and "falsely and fraudulently represented to plaintiff that the highest and only consideration or amount which said lessee was willing to pay for the use of said property under such lease" was $10,000 cash and other consideration out of the proceeds of the oil·produced; that relying upon said false and fraudulent "representations", and "believing the same to be true", she executed two leases of the property, one covering the east half and the other the west half, to one Alfred L. Marsten; that in truth and in fact said Marsten had offered $15,000 cash to said Koon and a certain royalty to be paid out of production; that defendants retained $5,000 thereof for their own use and benefit and paid plaintiff $10,000 only; "that plaintiff has acknowledged her willingness to pay defendants the sum of $750.00 as compensation in full" for the services rendered by them; that plaintiff executed the oil lease option agreement attached to the answer of defendants "upon the representation of the defendants, acting through Koon, that it was necessary for her to execute the same for the purpose of enabling said defendant to show prospective lessees that he was authorized to negotiate a lease of said property on her behalf", and that it was executed "relying

upon said representation, and solely for the purpose aforesaid".

The findings were evidently prepared by the court, a copy was sent to counsel for each party and an order made permitting the filing of an amended complaint to "conform to proof" in accordance with such findings, the allegations thereof to be "deemed denied". Judgment was entered for $4,250 of the alleged secret commission, being the $5,000 paid Koon by Marsten less $750 allowed for compensation.

It is not clear from plaintiff's testimony when the introduction of herself to Koon was made by Wingert, but the testimony of Koon fixes it as of July 10, 1928, and so do the findings. Nor is the service that Koon was to render made any more definite by the evidence of plaintiff. The latter quotes defendant Wingert as saying of Koon at the time of the introduction: "He is a man of considerable experience; I know he will be a man that will treat you fair and *handle* your property in the right way"; to which she said Koon responded, after acknowledging the introduction, that "he thought he could put over a deal for us, or work up a deal that would be satisfactory to us", and that Wingert said "the customary commission was 10%", but that "Mr. Koon had agreed to do this and work it up for 5%". Mr. Wingert admitted that he said to Mrs. Keck, substantially, "that Mr. Koon's compensation would ordinarily be 10%, but on this deal I think he is willing to take 5%", and that thereafter Koon entered into negotiations with respondent. Koon's testimony is to the effect that after the introduction Wingert said that Mrs. Keck "had some property out at Santa Fe Springs" that "she was trying to dispose of", and asked if he would look at it "and try to dispose of it for her"; that respondent asked as to his fee "in case I made a sale of the property, and I told her that real estate code of ethics put a 5% commission on a sale". It will be seen that the only definite statement as to what he was to do for the five per cent commission was to sell the property. This definite testimony as to what was to be done by Koon for the five per cent commission is not controverted. In view of the evidence we fail to see how the finding that "plaintiff employed Koon as her agent . . . and particularly to represent her in the matter of any sale or lease" of said property, and at "a commis-

sion of five per cent of all moneys that might be obtained upon any such sale or lease'', can be upheld. Koon interested certain people in paying $1,000 for a three days' option to buy a part of the property and to lease a part of it. The option was not taken up and the $1,000 was forfeited to Mrs. Keck.

A new well came in on the Santa Fe Springs field and Koon came to the conclusion that a lease might be made to the advantage of respondent. A written thirty-day option to lease her property was made by Mrs. Keck in favor of Koon, dated August 20, 1928, calling for a cash consideration of $15,000, $25,000 to be paid out of fifteen per cent of the first oil production and a royalty of one-sixth of production, a well to be spudded in within sixty days from date of the lease. With regard to this option respondent testified on direct examination to the following conversation with Koon, evidently after her first reading of it: ''Mr. Koon, this looks like a straight option from me to you,'' to which she stated he replied: ''It doesn't mean anything at all except this: these big companies won't allow me to come into their offices unless I have some kind of a paper,'' the witness adding, ''and we had asked him to try to lease the place to a big company''. She was then asked: ''And you signed the agreement?'' to which she answered, ''I signed it.'' The witness then identified another ''Oil Lease Option Agreement'', dated August 24, 1928, and testified that it was signed by herself and defendant Koon. This instrument was the same as the first, except that it was a ninety-day option instead of thirty days, the cash bonus was $10,000 instead of $15,000 and the well was required to be spudded in within one hundred and twenty days instead of sixty. Both options were introduced as plaintiff's exhibits. With regard to the second option, the attention of plaintiff was called by her attorney to the bonus of $10,000 cash provided for therein, ''it appearing there have been some erasures'', and she was asked whether or not at the time she signed it ''the words ten thousand dollars cash appeared in it'', to which she replied: ''This is the paper Mr. Koon showed me the evening in Mr. Wingert's office that had been erased, and it was in figures, and then later it had been erased, or looked as though it had been erased or something. It is in letters now.'' The witness was then

asked: "The question is, was that $10,000 or $15,000?" to which she replied, "It was $15,000.00. Q. At the time you first saw it? A. Yes." The court then asked plaintiff "whether the words 'ten thousand dollars' and the figures '$10,000.00' appeared in the document at the time" she signed it. To this the witness answered: "I haven't the duplicate of this—I don't know where—I kept all my papers together, but at the end I came to find out my papers were not dated like this paper was. I didn't have any 24th; but we were holding out for $15,000.00, and the evening we were in Mr. Wingert's office I discovered this had been $15,000.00—according to my memory it was $15,000.00, and I discovered it had been $15,000 and had been erased and put $10,000.00." This evasive answer did not satisfy and Mrs. Keck was again asked if the $10,000 was there at the time she signed the paper, her reply being: "I have nothing to go by except my memory. I know we were holding out for $15,000 and I haven't a duplicate of those papers. The fact that we were claiming and wanting $15,000 and trying to get $15,000, and then when I asked Mr. Koon to let me see this option paper he bet me $100.00 I couldn't produce one like it, and I said to him, 'you know the reason why' "— at which point the witness was interrupted by the question, "You haven't answered the court's question, madam. You can answer it yes or no. In this document to which you have just referred, at the time you signed it, had the figures been changed from $15,000 to $10,000?" After this instruction to the witness to answer the question "yes" or "no", she replied, "No, sir." Apparently the court was still not satisfied, as the following question was next asked: "What was the amount, so far as those figures were concerned, at the time you signed the document?" to which the plaintiff responded, rather evasively, "As well as I remember they were $15,000.00."

The testimony of Koon is to the effect that when he first talked to Mrs. Keck the commission he named and the one to which the conversation related was on the basis of a sale of the property. He then goes on: "But after I went into the deal and this other well out there came in the property got more valuable for leasing. Then I went to her and explained to her that in trying to lease the property I wanted an option to work on, and that I would get my

profit out of the other people, and she would know in advance what she was getting out of the property. And she gave me the option of the 20th and I gave it back to her on the 23rd.'' The witness had previously testified that the commission in leasing prospective oil property was a matter of agreement and was not fixed by the realty board rules. There was no conflict in the evidence as to such statements. Defendant Koon further testified that on his next visit after receiving the option of August 20th, and which was evidently on August 23d, when he ''took it [the option] back to her'', he told Mrs. Keck—and there is no conflicting evidence on this point—''that the oil men were kicking on the 60-day drilling clause'', and asked her ''to give me another option with a 120-day drilling clause in place of the one for 60 days, and she agreed to do so. I went up and had one prepared on the 24th day of August'', which ''read $15,000 cash and drilling in 120 days''. And: ''When I went down to Mrs. Keck's on the 24th Mrs. Keck said that the family had decided they would rather take a less cash bonus and get it in the hands of someone who would drill quicker, than to hang out for five or ten thousand dollars more cash bonus and take a chance on someone else proving out the field and drilling close to them; and for that reason they agreed that evening of the 24th before the papers were signed to change it from $15,000 to $10,000.'' Koon stated that he took both copies of the agreement back to his office and had the stenographer make the change from $15,000 to $10,000, which she did by erasing the former and inserting the latter amount with her typewriter in both copies. The stenographer's testimony corroborates that of defendant Koon in regard to such change. After the change was made, according to his testimony, Koon took both copies, then unsigned, to plaintiff, who read them over and called his attention to the fact that the option period was extended from thirty to ninety days, whereupon he asked her if that was satisfactory and she said it was; that each of them signed both copies, and that he left one with Mrs. Keck.

The evidence shows without dispute that on August 25th plaintiff executed another option to purchase the west six acres of the property mentioned for $20,000 cash and to lease the east four acres thereof for a bonus of $10,000, to be paid out of the first fifteen per cent of the oil produced,

good for three days and made as an alternate to the option of August 24th. This was followed by an option covering the whole property, dated October 3, 1928, good for ten days, also made "as an alternate" to the option of August 24th, providing for no cash bonus but for $35,000 to be paid out of the first fifteen per cent of oil produced. Each option in effect grants to L. A. Koon, erroneously designated "optioner", his heirs or assigns, the exclusive right and privilege of leasing the property for the purpose of prospecting or drilling for oil, gas or other hydrocarbon substances on the terms and within the time stated therein. The option of August 24th, under which it appears the lease was finally made, reads: "It is specifically understood that owner [Katie Keck] is to execute oil lease to optioner [Koon] or his assigns, at his or their request." It appears that each option, with the exception of that of August 24th, was specially designed to fit a deal with particular parties with whom Koon was working, and that he had no success until he met Alfred L. Marsten of San Francisco, about October 3d, and finally concluded negotiations with him. During such negotiations the option of August 24th was shown Marsten, who thereupon, according to Koon's testimony, asked what he, Koon, wanted, to which the latter replied, "$5000.00, 2% overriding and $5000.00 out of oil". Two leases were executed on October 9, 1928, between plaintiff and Marsten, in accordance with the option agreement of August 24th, except that, complying with plaintiff's request, two leases were made instead of one, one covering the east half and the other the west half of her property. No oil was found on the premises so leased, and before the trial date herein the owner of the leases had quitclaimed his rights to plaintiff.

The deposition of Marsten is to the effect that the cash price named in the option shown him was $15,000, and that Koon was to get $5,000 out of oil and a gross overriding royalty of two per cent. That he was confused in the amount named in the option agreement is clearly shown from figures prepared by himself at the time and handed to his lawyer with instructions to draw up the lease. Such figures show how the amounts agreed upon between himself and Koon were to be divided. The memo thereof was

introduced in evidence by the attorney for Mr. Marsten, and reads as follows:

|          | "Owner   | Koon    |
|----------|----------|---------|
| Percentage | 16–2/3% | 2%      |
| Cash     | 10,000   | 5,000   |
| Oil      | 25,000   | 5,000'' |

The testimony of the attorney corroborated that of Koon as to the instrument reading $10,000 to plaintiff at the time he saw it, and is to the effect that he drew the lease in accordance with such instruction.

The conversation hereinbefore referred to which took place in the office of appellant Wingert, and during which the offer to bet $100 was made by respondent, occurred in the latter part of January or the first part of February of 1929. At the time there were present the defendant Wingert, an associate of his, Mr. Nicholas, Koon, Mrs. Keck and her attorney, Mr. Luth. With regard to the wager of $100, plaintiff and her attorney testified that it referred to the production of a copy of the option of August 24th, the other witnesses that it went only to the production of an option of that date with the sum $15,000 appearing therein. Mrs. Keck apparently had duplicates of all the other option agreements, but strangely enough the particular one in question was missing. Evidently there is no denial that Koon gave her a copy of the option of August 24th, and there is no denial of the fact that under the lease she signed with Marsten she was only to get $10,000. Respondent rests her contention on the claim that she did not know Koon was to get anything out of the deal except a five per cent commission, which the record shows without dispute she never offered or agreed to pay him at any time, although her sworn complaint alleges that she promised and agreed to pay a commission of five per cent. Koon's testimony is to the effect that at the time he took the $10,000 check to respondent in payment of the cash bonus under the Marsten lease, he at the same time exhibited to her his check for $5,000 and told her what he was to get out of the oil produced, and that she said she was "awfully glad" he did that well for himself. This is denied by Mrs. Keck, who testified, however, that she asked Koon two or three days later what he got out of the deal and that he told her, and also that he had given

Wingert one-half of it, to which she remarked, "Poor Mr. Wingert, I guess he needed it." No complaint was made by her that she had been deceived or that the $5,000 belonged to her, and there is no showing of the indignant wrath one might expect upon discovering a loss of $5,000 through trickery, as respondent contends.

The evidence shows without dispute that appellant Wingert was seriously ill in a hospital from August 18, 1928, to some time in January of 1929, and knew nothing about the options or the making of the lease until after it was done. Wingert's wife, however, testified that Mrs. Keck called on her on October 11th, two days after the negotiations were completed, and gave her some flowers, saying "she was glad Mr. Koon had closed the deal at this time since Mr. Wingert was in the hospital and our expenses must necessarily be very high; she was so glad it was through this deal this money had come to us at this time".

The trial commenced December 3, 1929, and the cause was submitted December 8th. The case was apparently reopened on April 8, 1930, for the purpose of introducing the testimony of two witnesses for defendants, B. J. Bradner, attorney for Mr. Marsten, and Herbert R. MacMillan. We have already alluded to the testimony of Bradner. MacMillan was an oil man with whom Koon was negotiating. He testified that Koon had shown him the option of August 20th on August 23d; that a few days later Koon returned and exhibited the option agreement of August 24th, and at that time the witness noticed that the cash bonus to be paid respondent was $10,000 instead of $15,000, as in the former option; that in the latter part of September or the first of October he went with Koon to call on Mrs. Keck; that the agreement of August 24th was on the table when they were talking; that he told respondent he understood she was to get $10,000 in cash and $25,000 out of oil, and that he was "to pay Mr. Koon $5000 in cash and $5000 in oil and a 2% royalty out of oil"; that she said "she was very glad to see Mr. Koon get the money as he had worked hard on the deal". It appears that one of the "sticking points" in the negotiations with MacMillan was a cloud on the title which he, MacMillan, wanted "lifted". In the agreement finally concluded with Marsten that burden was assumed by him. During the conversation above

referred to Mrs. Keck's daughter was present. Mrs. Keck denied that MacMillan said he was to pay her $10,000 and Koon $5,000. The daughter, however, was not so positive, stating that "as far as she could recollect" there was nothing said as to that.

■ We have gone into the details of evidence that might on its face seem conflicting more than we should, but it is deemed important in view of the conclusion that we are forced to make, i. e., that there is no real conflict on material matters. It is clear that Mrs. Keck knew what she was signing at the time she executed the first option agreement; that the agreement was signed voluntarily and without fraud on the part of anyone; that thereafter she executed in a similar manner three other options along lines that seemed to fit negotiations being conducted by Koon; that the one of August 24th called for no cash bonus, but for a bonus of $10,000 to be paid out of oil; and that respondent attempted to avoid the effect of such documents, and particularly the one of August 24th, by the statement that Koon told her they did not mean anything except that he needed them to get into the offices of the big companies. There is no ambiguity in the option last referred to, or in any of them, and no room for interpretation of terms or meaning; and we know of no principle that permits one who has executed a document which is clear on its face, with a knowledge of what it means, to set it at naught on such evidence as appears in the record of this case. ■ It has been frequently held that oral testimony which rests upon the memory of witnesses is not as trustworthy as written or documentary evidence, and that a party seeking to establish a fact contrary to the written evidence must make out his case with more than usual clearness. (*Van Dorn* v. *Crary*, 198 App. Div. 931 [189 N. Y. Supp. 252, 258].) "A written instrument unquestionably executed by a person by whom it purports to have been made . . . cannot be properly condemned as false and fraudulent except upon clear and satisfactory evidence." (*Russell* v. *Scofield*, 134 Wis. 21 [113 N. W. 1094].) The evidence in this case shows no real conflict on material points (*White* v. *Greenwood*, 52 Cal. App. 737 [199 Pac. 1095]), and to set aside clear and unambiguous written instruments and stamp the

character of a transaction as fraudulent on the evidence presented here would be a miscarriage of justice.

Defendants have also appealed from the order denying their motion for a new trial. There is no such appeal in civil cases. (Sec. 963, Code Civ. Proc.)

The appeal from the order denying motion for new trial is dismissed. The judgment is reversed.

Works, P. J., and Stephens, J., concurred.