253 P.2d 537]

Appellate Department, Superior Court, San Diego

[Civ. A. No. 177555.   Jan. 25, 1953.]

WILLIAM LIPSCHULTZ et al., Appellants, v. GREGORY ELECTRIC COMPANY (a Corporation), Respondent.

( 915 )

Alfred Beck for Appellants.

Oakes & Horton for Respondent.

BURCH, J.—The defendant, Gregory Electric Company, was an Illinois corporation engaged in the business of buying and selling electrical equipment in Chicago, Illinois. The plaintiffs, a father and two sons, were engaged in a general brokerage business, buying and selling ferrous and nonferrous scrap metal in the junk business. They were acquainted with Tom Pass, who was the defendant's general manager. They proposed to him on May 17, 1948, that they could procure at an auction sale to be conducted on May 21, 1948, by the War Assets Administration at Milwaukee, Wisconsin, certain electrical equipment known as an ''Uptograff transformer,'' which was listed in a catalogue as ''Lot 57,'' and which catalogue was in plaintiffs' possession at the conference on May 17, 1948.

The only witnesses at the trial were George and Sidney Lipschultz, plaintiffs, and Tom Pass, general manager of the defendant. They were acquainted with each other and seemed to have conducted this transaction on an informal basis without a writing to evidence their agreement, if any. As testified by George Lipschultz, he was told by Mr. Pass that if he could procure the transformer described in the catalogue at the contemplated sale for a price not to exceed $2,000, Pass' firm would take it off their hands. That is but to say a sale contract would be made if the plaintiffs could buy the unit for less than $2,000 at an auction sale yet to be held. The

transformer was described in the catalogue as a one phase transformer. There is also a three phase transformer which is more costly and more marketable equipment. Mr. Lipschultz stated that he showed the catalogue to Mr. Pass at the conference preceding the sale. ■ On the other hand, Mr. Pass testified that their conference had to do entirely with a three phase "Uptograff transformer"; that he did not see the catalogue; that he accepted Mr. Lipschultz's statement that Mr. Lipschultz would be able to buy the three phase transformer, and stated to him that should he be able to buy it that the Gregory Electric Company would advance the necessary funds and split the profits on a resale. Mr. Lipschultz purchased the one phase transformer at the sale for $1566.66 and shipped it to defendant's place of business where it arrived on June 14, 1948. It was then that Mr. Pass discovered that the transformer received was not a three phase type and shortly thereafter telephoned to Mr. Sidney Lipschultz. In regard to the conversation he testified:

"I explained the transformer had come in and it was a single phase instead of a three phase and we couldn't possibly accept the unit or accept the agreement regarding the purchase."

On June 25, 1948, plaintiffs addressed a letter to the War Assets Administration asking for shipping instructions and saying they could not use the transformer shipped.

We think this evidence is sufficient to support the finding that the defendant did not agree to purchase the transformer of one phase type, upon which plaintiffs base their entire claim. It is, of course, true that other evidence in the record conflicts with the view taken by the court, but the evidence we have set out above is substantial, and evidence to the contrary at the trial did no more than create a conflict.

" 'It is fundamental that where a judgment is attacked on the ground that it is not supported, the power of the appellate court ends when it shall once have determined that there is substantial evidence which will support the conclusions of the trial court.' " (*Viner* v. *Untrecht*, 26 Cal.2d 261, 267 [158 P.2d 3].)

Plaintiffs, notwithstanding, would have us reverse the judgment, and argue particularly what they assert is the probative value of a document introduced in evidence, which is a printed form of invoice with the billhead of the plaintiffs' firm name, Abel Iron and Metal Company. The document is dated May 20, 1948, and indicates a sale as of that date to the defendant

of a one phase type transformer. It indicates that the unit was shipped on May 26, 1948, by the "West Shore." All parties agreed that the War Assets Administration held their sale at Milwaukee, Wisconsin, May 21, 1948, the day following the date of this so-called invoice; that the unit was not shipped on May 26, 1948, but on June 14, 1948; that it was not shipped by the "West Shore" but by the Shea-Matson Trucking Company. Moreover, Mr. Pass testified that the date of receipt of the writing was after June 14, 1948. Upon this so-called invoice, there was written across the face in the handwriting of Mr. Pass the word "Hold."

It is the contention of plaintiffs that this document resolves the conflict in favor of their contention as a matter of law. To this end they cite *Herbert* v. *Lankershim,* 9 Cal.2d 409, 471, 472 [71 P.2d 220] ; *Duryea* v. *Zimmerman,* 143 App.Div. 60 [127 N.Y.S. 664, 666, 668, 669, 670], including a quotation from Lumpkin, J. (*Miller* v. *Cotton,* 5 Ga. 341, 349) to the following effect:

"I would sooner trust the smallest slip of paper for truth than the strongest and most retentive memory ever bestowed on mortal man." (*In re Irvine,* 102 Cal. 606, 610 [36 P. 1013] ; *Keck* v. *Wingert,* 132 Cal.App. 475, 485 [23 P.2d 99].)

The writing referred to by Lumpkin, J. was a deed from a son to a father upon which, after the death of both grantee and grantor, the plaintiff sought to impose a trust and introduce parol evidence to that effect.

In *Herbert* v. *Lankershim, supra,* the trial court and the District Court of Appeal had accepted as true a writing which purported to be a promissory note for $500,000. Upon appeal, the Supreme Court in a learned analysis repudiated this finding because of the untrustworthiness of the document. ■ While it is true that on appeal the question as to whether or not there is substantial evidence is a question of law for the court, it follows from nothing said in *Herbert* v. *Lankershim, supra,* that a self-serving document has unusual probative value.

It was held in *In re Irvine, supra,* that the oral testimony of a party given six years after the transaction raises no substantial conflict with her clear and explicit writings to the contrary executed at the time of the transaction under circumstances usual and ordinary in such cases as to matters of which the parties were fully advised. Somewhat the same variance exists in *Keck* v. *Wingert, supra,* in that the party

sought at a much later date to impeach her own written documents.

*Duryea* v. *Zimmerman, supra,* was an action for deceit caused by misrepresentation of facts in a prospectus whereby plaintiff alleged he was induced to buy stock in a foreign corporation. The Appellate Division of the Supreme Court reversed the decision of the trial court and granted a new trial, where the record clearly showed that plaintiff's purchase of stock predated the issuance of the prospectus, which was alleged as the ground of deception.

We think the contrasts in their facts of the cases cited with the present case is such as to establish no authority for reversing the judgment here. The writing before us has not the probative force of a deed, or a bookkeeping entry, or a written acknowledgment of an obligation. On the contrary, it was but a memorandum looking to the occurrence of expected future events, unless perchance its date was likewise erroneous. As a matter of fact, this very memorandum was admitted to be false in more than one important recital. Plaintiff's testimony, taken at its full face value, could only support a sale upon the uncertain event that he would be the successful bidder at the auction on May 21st. There was no testimony of a firm agreement. The evidence was that a contract would be entered upon should certain eventualities occur. Moreover, the parties, according to their testimony, respectively, were not in agreement as to the subject matter. That, at least, was what the court properly found.

The legal situation comes to this: Mr. Lipschultz was talking about a one phase transformer, Mr. Pass about a three phase transformer. Each expected the other would contract on the basis of a type of unit of which that other was unaware.

"A proposal to accept or acceptance upon terms varying from those offered is a rejection of the offer." (*Meux* v. *Hogue,* 91 Cal. 442, 448 [27 P. 744].)

". . . the parties must have consented to the same subject-matter in the same sense, and the burden is upon the plaintiff to show that a contract, definite and certain in its terms, was entered into between the parties as a condition of obtaining any relief." (*Breckinridge* v. *Crocker,* 78 Cal. 529 [21 P. 179].)

The record here also discloses an advertisement by the defendant for the sale of the transformer in the August, 1948, issue of "Surplus Record," which advertisement, however,

did not result in a sale. It was explained in the testimony of Mr. Pass that his firm followed a common and usual practice in listing for sale items of equipment it knew it had a reasonable chance of being able to secure in the event of an offer to purchase. It was further testified that the Gregory Electric Company had a general liquidation sale by auction and that the auctioneer at the sale offered the transformer in question for sale at the request of Mr. George Lipschultz. In view of the relation of the parties and the circumstances, we think the trial court may have been very correct in accepting the defendant's view of these advertisements and attempted sales.

Some months after the close of the trial and the pronouncement by the court of its judgment, plaintiffs sought to reopen the case by introducing an affidavit of the plaintiff, Sidney Lipschultz, which narrated a conversation which the affiant had had with one Korer who was proprietor of the Ace Power and Equipment Company in Chicago where the transformer was in storage. The court refused to reopen the case because of the newly discovered evidence. There was no error in refusing the affidavit as newly discovered evidence.

The judgment is affirmed.

Turrentine, P. J., and Glen, J. concurred.