[Civ. No. 2859.   Third Appellate District.—January 14, 1925.]

## OSCAR B. LYON, Appellant, v. IDA B. LYON et al., Respondents.

[1] HUSBAND AND WIFE — CONVEYANCE TO WIFE — SEPARATE PROPERTY — PRESUMPTION — EVIDENCE.—In an action involving the title to real property conveyed to a married woman, it is a question of fact for the court to determine whether the evidence against the presumption, arising under section 164 of the Civil Code, that the title was thereby vested in her as her separate property, is sufficient to overthrow such presumption.

[2] ID.—PURCHASE WITH COMMUNITY FUNDS—GIFT—REBUTTAL.—In an action by a husband to quiet title to real property purchased with community funds and, at the request of the husband, conveyed to the wife, the burden is upon the husband to show that the conveyance was not intended as a gift to the wife.

[3] ID.—INTEREST OF HUSBAND—DECLARATIONS—PRESUMPTION—FINDING.—In such action, the evidence on behalf of the defendant to whom the wife had mortgaged the property that the husband always maintained that the property belonged to his wife, together with the presumption arising from the conveyance to the wife, was sufficient to sustain the finding, in favor of the mortgagee, that the husband had no interest in the property, notwithstanding the husband's testimony to the contrary.

[4] ID.—REQUEST TO EXECUTE DEED—PROSECUTION FOR NONSUPPORT—MENACE AND DURESS. — A mere request by an officer of a bank to a husband to execute a deed in favor of the wife of the latter does not constitute menace or duress; neither does the prosecution of the husband for the alleged nonsupport of his wife constitute either menace or duress, unless fraudulently obtained or conducted.

[5] ID. — REQUESTING CONVEYANCE TO SUPPORT WIFE — DURESS OR MENACE BY PROSECUTING OFFICER.—It is not duress or menace for a prosecuting officer merely to ask a husband, who is being prosecuted for failure to support his wife, whether he is willing to convey property to her for her support.

[6] ID.—EXECUTION OF DEED TO WIFE—DELIVERY TO THIRD PERSON—RECORDATION—KNOWLEDGE—ACCEPTANCE.—Where a husband executes a deed in favor of his wife and delivers it to a third

1.  Conveyances from husband to wife, notes, 88 Am. Dec. 54; 133 Am. St. Rep. 607.

Husband's purchase of property in name of wife as creating resulting trust, notes, Ann. Cas. 1915C, 1082, 1097, 1102. See, also, 13 R. C. L. 1389, 1394; 13 Cal. Jur. 852.

person to be recorded, that is a sufficient delivery on the part of the grantor; and the fact that the wife may not have assented to the delivery at the time the deed was executed, or may not have known of such execution, is immaterial where, after knowledge of its existence, she endeavors for nearly two years to sell the property and then executes a trust deed thereon to secure her indebtedness to a bank and no party other than she is claiming under the husband.

(1) 31 C. J., p. 49, n. 3, p. 157, n. 49 New.    (2) 31 C. J., p. 156, n. 37.    (3) 31 C. J., p. 157, n. 39.    (4) 18 C. J., p. 234, n. 39, 41; 22 C. J., p. 135, n. 38.    (5) 18 C. J., p. 234, n. 41.    (6) 18 C. J., p. 207, n. 8, p. 214, n. 78, 93.

APPEAL from a judgment of the Superior Court of Stanislaus County. E. N. Rector, Judge. Affirmed.

The facts are stated in the opinion of the court.

Stephen N. Blewett for Appellant.

L. J. Maddux and Albert L. Johnson for Respondents.

FINCH, P. J.—The complaint in this action is in the ordinary form in a suit to quiet title. The defendants were given judgment and the plaintiff appeals. The plaintiff and the defendant Ida B. Lyon are and at all times mentioned herein were husband and wife. During the same time J. R. Broughton was president of the defendant bank.

The property in dispute is block 31 of "what is known as Maze Addition to the City of Modesto." The answer of defendants Geo. Cressey, J. J. McMahon and The Modesto Bank denies the plaintiff's title and alleges that on the eighth day of November, 1897, the land was conveyed to defendant Ida B. Lyon as her separate property; that on the tenth day of February, 1913, the plaintiff executed and delivered to Ida B. Lyon a conveyance of the land; that on the twenty-eighth day of October, 1916, he conveyed to Ida B. Lyon, by quitclaim deed, all of his interest in the land; that on the twelfth day of January, 1921, Ida B. Lyon executed and delivered to "Geo A. Cressey and J. J. McMahon, as parties of the second part, and The Modesto Bank, a corporation, party of the third part," her deed of trust conveying the land to secure an indebtedness to the bank of $3,227.60, evidenced by her promissory note of even date for that sum; that the indebtedness is unpaid and that the

promissory note and deed of trust "are now in full force and effect"; and prays "that said promissory note be declared valid, and that said trust deed be declared to be a valid lien on said land." The answer of defendant Ida B. Lyon denies plaintiff's title; alleges "that each of said defendants have some right, title, estate, or interest in or to the said land or premises, and the whole thereof," that she is and ever since the eighth day of November, 1897, has been "the sole owner of the said land and premises, and is entitled to have the same quieted against each and every one of the other parties to this suit"; and prays for a decree adjudging that plaintiff has no interest in the land and that her codefendants have no lien thereon. After the commencement of the action, and after *lis pendens* had been recorded therein, the land was sold, pursuant to the terms of the trust deed, to satisfy the indebtedness secured thereby.

The land was purchased in the year 1897 with community funds and the conveyance thereof made to Ida B. Lyon by direction of the plaintiff. He testified that it was not intended as a gift to his wife. She testified that at the time of the purchase the plaintiff "was getting ready to go to Alaska in the spring . . . and when he bought this property in the fall he put it in my name, saying that if he never returned I would not have any trouble over the property"; that nothing was said about making her a gift of the property. Broughton acted for plaintiff in the purchase of the property, prepared the deed and, as notary public, took the grantor's acknowledgment of the execution thereof. Broughton testified that "possibly" he knew at the time of the purchase that it was made with community funds but that the plaintiff never made any claim to the witness that he had any interest in the property but "always maintained it belonged to" Mrs. Lyon. Plaintiff testified that he never told Broughton that the property belonged to Mrs. Lyon. Several times after the purchase the plaintiff and his wife executed mortgages and trust deeds of the property to the defendant bank to secure the payment of their indebtedness to it. Thereafter, on January 16, 1912, they executed a trust deed to secure an indebtedness of $970 to the bank.

On the 10th of Febuary, 1913, the plaintiff signed a printed form of deed and left it with Broughton. The latter testified: "He was going away, and I told him his wife was

70 Cal. App.—39

talking about selling the property for a school site, and some people was particular about having their husband sign a deed whether he had any interest in it or not. . . . And so I suggested he sign this deed and, not knowing who she might sell to, that she could sign the same deed afterwards and it would probably answer. . . . And I told him at the time if she didn't sell it, I could insert her name later and then she surely would have no trouble in selling it. Q. Yes. And that was done with an understanding with him? A. Yes, sir, said he didn't want h'er to have any trouble selling it.'' Broughton later wrote the description of the property in the blank form of deed and inserted the wife's name as grantee. The deed purports to convey the property to Mrs. Lyon expressly ''as her separate property.''

For about three years prior to the execution of the quitclaim deed the plaintiff had not been living with his wife, but was working in another part of the state. She caused his arrest for failure to provide her with necessaries and he was imprisoned in the county jail to await his preliminary examination. Broughton called on plaintiff in the jail and ''talked to him about'' the execution of a quitclaim deed to Mrs. Lyon. Plaintiff testified that at his preliminary examination ''the district attorney says to me, 'Will you give Mrs. Lyon a quitclaim deed to this property?' I thought for a moment and I could easily see that if I hadn't done so that possibly I might have been held over to the superior court, and I says, 'Yes,' and then he speaks to Mr. Rice and says, 'Have you got a deed there to be signed—made out?' And he looked and he says, 'No.' And Mr. Rice rang up the bank and conversed with the bank for a few moments and then he told me that I could go down to the bank and sign it.'' It does not appear whether Mr. Rice was connected with any of the parties. Plaintiff was discharged and thereafter called at the bank and executed the quitclaim deed. Broughton testified: ''Mrs. Lyon told me she had legal advice that the first deed was not any good on account of it not being filled out at the time her husband had signed it. . . . So the first time I saw him after she told me that, or a few days afterwards, I prepared another one . . . and asked him to sign it and he said, 'All right,' if the other one wasn't good he wanted to make it good. . . . He signed it. . . . Paid me the money to record it.'' Mrs. Lyon testi-

fied that Broughton told her that "he had made Mr. Lyon sign the quitclaim deed." Broughton testified that he never at any time told anybody that he made Mr. Lyon sign any deed.

On the 9th of November, 1916, Mrs. Lyon executed a trust deed of the property to secure an indebtedness to the bank of $2,137.70. January 12, 1921, she executed the trust deed alleged in the answer of Cressey, McMahon and the bank. There is no dispute as to the amount of the indebtedness to the bank.

The appellant contends that the land in controversy is community property, that the bank had knowledge of that fact through its president, J. R. Broughton; that the deed of February 10, 1913, is "void for the reason that it was signed in blank by plaintiff, and wrongfully filled in by J. R. Broughton, officer of the Modesto Bank, against the express instructions of the grantor"; that the quitclaim deed is "void by reason of menace and duress exercised upon plaintiff by the Modesto Bank through its president, J. R. Broughton"; that there was no delivery of the quitclaim deed. The other points made are included in the foregoing.

[1] At the time of the conveyance of the land to Mrs. Lyon on the 8th of November, 1897, and at all times since, section 164 of the Civil Code provided: "Whenever any property is conveyed to a married woman by an instrument in writing, the presumption is that the title is thereby vested in her as her separate property. . . . The presumption in this section mentioned is conclusive in favor of a purchaser or encumbrancer in good faith and for a valuable consideration." It was a question of fact for the court to determine whether the evidence against the presumption was sufficient to overthrow it. (*Stafford* v. *Martinoni,* 192 Cal. 724, 738 [221 Pac. 919].) [2] The purchase being made with community funds, the burden was on plaintiff to show that the conveyance was not intended as a gift to his wife. (*Pabst* v. *Shearer,* 172 Cal. 239 [156 Pac. 466].) [3] There is no evidence to show that Broughton or the bank had information of any facts which would rebut this presumption. Broughton testified that the plaintiff always maintained that the property belonged to his wife. This evidence, notwithstanding plaintiff's testimony to the contrary, together with the presumption arising from the conveyance to the wife,

was sufficient to support the finding, in favor of the bank, that the plaintiff has no interest in the property. The deed of February 10, 1913, may be left out of consideration. That would be the effect of holding it to be void as contended for by plaintiff.

Relative to the circumstances under which the quitclaim deed was executed, it was for the trial court to determine whether to believe the testimony of plaintiff or that of Broughton, and, in view of the findings, it must be presumed that the court believed the latter. [4] According to Broughton's testimony, he merely requested the plaintiff to execute the quitclaim deed. A mere request to execute a deed does not constitute menace or duress. There is no evidence to show that either Broughton or the bank was instrumental in causing the arrest or prosecution of the plaintiff for the alleged nonsupport of his wife. It is not shown that either Broughton or the bank had knowledge of the fact, if it be a fact, that the plaintiff executed the quitclaim deed to escape prosecution under the criminal charge of nonsupport. Neither did such prosecution constitute either menace or duress, unless fraudulently obtained or conducted. (Civ. Code, secs. 1569 and 1570.) The presumption of good faith must prevail in the absence of evidence to the contrary. [5] It certainly is not duress or menace for a prosecuting officer merely to ask a husband, who is being prosecuted for failure to support his wife, whether he is willing to convey property to her for her support.

It is contended that there was no delivery of the quitclaim deed to Mrs. Lyon, the particular point urged being that there is no evidence to show her acceptance thereof. The plaintiff executed the deed and left it with Broughton, giving him the money necessary to pay for recording the same. Broughton caused the deed to be recorded and for a few years thereafter kept it, together with the deeds of 1897 and 1913 herein mentioned. He testified that it was his custom to keep instruments of that nature until the parties in whose favor they were made called for them. Mrs. Lyon did not testify whether she had knowledge of her husband's promise to the district attorney that he would execute the quitclaim deed. She testified that she first saw it between the 5th and the 10th of November, 1921, but that in March, 1919, Broughton told her of its existence; that

from that time until January, 1921, she "tried continuously" to sell the property. While nominally a defendant, it is apparent that it was to the interest of Mrs. Lyon to support the contentions of the plaintiff to the effect that the land in controversy is community property and that the deeds from plaintiff to her are invalid, beause there is no other theory presented by the record on which she could hope to defeat the lien of the bank. She answered questions by counsel for plaintiff as follows: "Q. . . . You recognize you owe this indebtedness, do you not, Mrs. Lyon? A. Why, certainly. Q. And you hope to pay it, intend to pay it, don't you, if you can? A. Yes, sir." The court, in weighing her testimony, was justified in taking into consideration her verified answer which alleged "that she has been the owner in fee and entitled to the possession of the hereinabove described real property, and has been such ever since the 8th day of November, 1897." The court was not obliged to accept her explanation that such allegation was made at the suggestion of her attorney. [6] After knowledge of the execution of the quitclaim deed, Mrs. Lyon endeavored for nearly two years to sell the property and then executed the trust deed under which the bank caused the property to be sold. Under the facts stated the court could not well have drawn any other inference than that the quitclaim deed was delivered and accepted. The delivery of the deed to Broughton to be recorded was a sufficient delivery on the part of plaintiff. (*Wedel* v. *Herman,* 59 Cal. 507.) The acts of Mrs. Lyon with relation to the property, after knowledge of the execution of the deed, constituted an acceptance thereof. The fact that she may not have assented to the delivery at the time the deed was executed, or may not have then known of such execution, is not material in this case, because no party other than Mrs. Lyon is here claiming under the plaintiff. "Such assent when given will, as between the grantor and the grantee, relate back to the time when the grantor first handed the deed over to a third person to be delivered to the grantee." (*Green* v. *Skinner,* 185 Cal. 435, 438 [197 Pac. 60, 61].)

The judgment is affirmed.

Hart, J., and Plummer, J., concurred.