[Civ. No. 6672. Second Appellate District, Division One.—August 31, 1931.]

SANTA ANA SUGAR COMPANY (a Corporation), Appellant, v. CARLIN G. SMITH, Respondent (Two Cases).

O'Melveny, Tuller & Myers and H. R. Snyder for Appellant.

Freston & Files and Charles H. King for Respondent.

YORK, J.—This is an appeal from a judgment covering two cases—Nos. 162,584 and 171,792—which two cases were consolidated for trial and were tried together upon the same evidence.

The first of these actions was brought to recover on twenty-five promissory notes, the complaint alleging that the defendant for a valuable consideration waived any right which he (the respondent here) thereafter had to plead the

bar of the statute of limitations against any and all actions which might be commenced on said indebtedness evidenced by said promissory notes, provided action should be commenced within one year from the date of the agreement of November 13, 1924. It was further alleged that, although the defendant had paid the plaintiff certain amounts on account of said promissory notes, there was still due on such notes the sum of $45,190.38, together with interest at eight per cent per annum from the date of the notes, and reasonable attorney's fees, costs, etc.

In the second action—No. 171,792—the complaint alleged that the defendant guaranteed the payment of seventeen promissory notes (other and different than those sued on in the first action) which notes were executed by the defendant's wife. It is also alleged that on November 13, 1924, defendant for a valuable consideration guaranteed in writing the payment not later than December 13, 1924, of all sums then due from defendant's wife on said notes, whether such sums were then or might thereafter become barred by the terms of the statute of limitations. The complaint then prays for judgment in the amount of $8,677.50, alleging that this was the amount unpaid on the seventeen promissory notes mentioned, together with interest, reasonable attorneys' fees, costs and other relief.

In both of these actions the defendant answered, and after admitting the execution of the promissory notes and the guarantee of the notes executed by the wife of the defendant, and after admitting the agreement purporting to waive the bar of the statute of limitations signed November 13, 1924, set up affirmative defenses in both cases which sought to avoid the liability incurred.

The first of these affirmative defenses was that, prior to and at the time of the execution of the notes sued upon, an oral agreement was entered into and in effect between the parties providing that certain advances made by appellant to respondent, evidenced by the notes in suit, should be paid only out of crop returns credited to respondent, that any deficit in one year's crop should be carried over to the succeeding crop year, and so on, until such advancements were paid; and if a deficit remained when respondent should for any cause cease growing sugar beets, the amount of the advances then remaining unpaid should fall upon appellant.

It is alleged in this defense that the defendant refused to sign, make, execute or deliver the notes in question when the same were presented for that purpose, and that plaintiff, through its agent, represented that the purpose of the execution and delivery of said notes was merely to protect plaintiff in its claim to the crops as against third parties, and that the foregoing agreement would still control and defendant would not be obliged to pay the notes in question. Upon this understanding and with that single purpose, the notes were then executed. It is also alleged in the answer that these promises and representations of the plaintiff were false and were made without any intention of performing the same. As further affirmative defenses, it was alleged by defendant that when he signed the agreement of November 13, 1924, there was no meeting of the minds of the parties, and also that the contract of November 13, 1924, was executed and delivered under duress.

The trial court in its findings found everything in favor of the defendant, and particularly: That on said day, November 13, 1924, and for some time prior thereto—without specifying the time—the defendant had been ill, and defendant's condition of mind and his nervous and physical condition were such that he did not have any clear conception of what he was doing or what it meant to him when he signed and executed the said waiver of any right to plead the bar of the statute of limitations and the said guarantee of said notes of Helen Keating Smith (his wife), as aforesaid, and that he did not freely or understandingly give assent or consent thereto, and that he did not know the nature and consequence of his act or acts.

Therefore, the only questions involved are:

1st. Is appellant correct in its contention that the trial court erred in admitting evidence to prove an oral contemporaneous agreement, changing, modifying and practically contradicting the clear and unambiguous terms of the promissory notes sued upon?

2d. That even if such evidence could have been admitted, still as a matter of substantive law, can such evidence modify or vary the legal effect of the written promise?

3d. Did the court err in admitting evidence to prove oral conversations between Gerhart, the appellant's agent, and one of the executive officers of the company, by which it was

sought to establish that Gerhart was given authority to make any arrangement he saw fit with the defendant to induce him to raise sugar beets?

4th. Did the court err in admitting oral evidence as to the conversations which occurred at the time the defendant executed the agreement of November 13, 1924?

5th. Whether or not appellant is right in its contention that (irrespective of whether such evidence was properly admitted), the facts alleged as a basis for escaping from the obligations of said contract were and are, as a matter of law, insufficient to justify a finding that it was obtained under duress, or insufficient to relieve defendant from the obligations of the contract?

From an examination of the entire record, it clearly appears that the plaintiff was entitled to judgment, unless the so-called affirmative defenses were good. As stated by appellant, the whole case boils itself down, therefore, to these issues:

First. Could the court receive evidence of the alleged oral understanding, which it is claimed was made at the same time the notes were executed, to the effect that defendant would not have to pay them under certain contingencies; and even if such evidence were received, does it in law constitute a defense to the action?

Second. Can the defendant escape the legal effects of his contract of guaranty and waiver of the statute of limitations made November 13, 1924—which it is admitted he executed —on the plea that he did so under duress, because if he had not signed the same the plaintiff would have brought suit on the notes before the statute of limitations expired, or can he escape liability on the plea that he did not fully understand said contract?

■ Conditional delivery refers to conditions *precedent* and not to conditions *subsequent,* and may or may not depend upon conditions concurrent. There is no question but that the terms of a written agreement cannot be modified by parol (20 A. L. R. 421, at 490, and annotations supplemental thereto in 54 A. L. R. 702, at 717), although it is also true that a conditional delivery may be so proved, if not in direct conflict with the express wording of the written agreement itself. ■ But the attempt to show that the delivery of the notes in this case was conditional fails, first, because

it is in direct conflict with the written agreement (*Leonard v. Miner*, 120 Cal. 403 [52 Pac. 655]; *Lompoc Valley Bank v. Stephenson*, 156 Cal. 350 [104 Pac. 449]); and, second, because the only proof of conditional delivery was evidence of conversations that took place after the delivery of at least a portion of the consideration for the notes in question. Further, it appears in evidence that on November 13, 1924, an additional agreement was made guaranteeing the payment of the notes and waiving the statute of limitations, upon the express condition that a suit should not be brought upon said notes within a certain length of time. And as we view it, this operated as a republication of the notes of the defendant. The claim of respondent that this agreement was signed by reason of duress, in that he was afraid that suit would be brought, is not legally good, because this in itself would not constitute duress. A threat to exercise a valid, legal right cannot be construed to be an act of duress. There is no evidence that the plaintiff was aware of the fact that the defendant had signed a false statement at his bank with reference to his indebtedness, and was, therefore, afraid if suit was brought it might cause him trouble with the bank. There is no evidence that defendant was without any understanding on November 13, 1924; in fact the only evidence as to his mental status was that he did not remember at the time of trial what was said on the date when he signed the agreement waiving the bar of the statute of limitations against the notes, except that he was physically in bad health at or about the time he signed this agreement, no definite date being fixed as to when he was physically in such ill health. There is, in fact, no evidence whatever as to his physical condition or as to his mental incompetency or condition on the particular day when the agreement of waiver was signed.

As a part of the same agreement made on November 13, 1924, the defendant agreed as follows: "Debtor hereby guarantees the payment, not later than December 13, 1924, (or if suits aggregating more than $2500.00 are pending or instituted, as aforesaid, then at the time such suits are instituted), of all sums now due from Helen K. Smith (sometimes known as Helen Keating Smith or H. K. Smith) to Creditor, whether such claims are now or may be hereafter barred by the statute of limitations."

■ The consideration for this agreement was that Smith desired the creditor to defer bringing action on any of the indebtedness which he admitted was due from him at that time, and the creditor agreed to defer bringing such action only upon condition that Smith enter into the agreement in the form as signed. The creditor forbore to institute at any time before December 13, 1924, any action against Smith based on any or all of his indebtedness, unless the action or actions pending or instituted against Smith involved in the aggregate more than $2,500. The consideration was ample and the only questions raised are: First, whether or not the agreement of guaranty is good even though made for a consideration; and, second, whether or not respondent Smith was entirely without understanding at the time he signed this agreement on November 13, 1924. As to his mental incompetency, we have covered that point in a preceding portion of this opinion.

■ As to the question of whether or not an agreement to pay the debt of another is good when the indebtedness of the other has been outlawed by the statute of limitations, that is a question that has been determined differently in different jurisdictions, usually depending upon the particular facts and circumstances attending the particular transaction. Upon the face of the record, it appears that all of the notes of his wife that were guaranteed by the defendant had become outlawed before his agreement to pay all of these notes was made. There was ample consideration, as we have said before, for the making of this agreement. The trial court found that this guaranty in writing of the notes signed and executed by Helen Keating Smith was signed at a time when ''the defendant had been ill, and defendant's condition of mind and his nervous and physical condition was such that he did not have any clear conception of what he was doing or what it meant to him when he signed and executed the said waiver of any right to plead the bar of the statute of limitations and the said guarantee of said notes of Helen Keating Smith as aforesaid, and that he did not freely or understandingly give assent or consent thereto and that he did not know the nature and consequence of his act or acts.

''That prior to November 13th, 1924, the plaintiff threatened the defendant to institute proceedings against him

to recover on said notes and to issue and levy attachments in said legal proceedings.

"That the defendant was conducting his business with money borrowed from his bank and that in order to obtain such credit, it has been necessary for the defendant to submit to the said bank a financial statement, and upon making up such statement the defendant has failed to list thereon any debt or debts evidenced by the promissory notes aforesaid in that the said defendant believed at that time that the said plaintiff would not require him, the defendant, to make any payment thereon or thereunder.

"That at the time the defendant was requested by the plaintiff to enter into the contract of November 13, 1924, the plaintiff threatened the defendant that unless he entered into such contract it would cause action or actions to be commenced against him and would attach and levy upon any and all property which it could discover as belonging to him, and the defendant informed the plaintiff that such action or actions instituted against him would ruin his credit with his bank and make it impossible for him to carry on and continue his business, which was that of a real estate dealer or broker. That notwithstanding the representations made by the defendant to plaintiff as aforesaid and notwithstanding the defendant's physical and nervous condition, the plaintiff continued to threaten to commence legal proceedings against the defendant and to issue attachments, and that by reason thereof the defendant was unduly influenced by such threats and was compelled to and did sign the said contract or contracts dated November 13, 1924, and that the defendant did not understand the nature and consequence thereof or the obligation or obligations he was assuming thereby, and that by reason thereof there was no assent or consent on his part, as aforesaid."

There is, however, in the evidence before us, nothing which would justify the said findings or any part thereof, except only that the plaintiff did threaten defendant to institute proceedings to recover on his notes and to issue and levy attachments in such legal proceedings, and, as we have said before, a threat to exercise a legal right cannot in itself constitute duress. The court does not find, and it is not in evidence that the plaintiff was aware of the fact that the defendant had concealed from his bank when borrowing

money any knowledge of the notes signed by him in favor of the plaintiff. There is evidence that the defendant discussed at this time, when the court finds that he was incompetent, the fact as to what effect the bringing of the suits would have upon his credit with the bank, and also otherwise as to his business in general. There is no evidence that would justify the court in finding that the defendant did not understand the nature or consequence of the contract of November 13, 1924, or the obligation or obligations that he was assuming thereby.

Under all the circumstances shown by the evidence, we are of the opinion that the agreement of November 13, 1924, was also valid in so far as it constituted a guaranty of the notes executed by the wife of the defendant, and made him liable to the plaintiff therefor.

One judgment having been entered in the two consolidated actions, the order of this court is that the judgment of the lower court be, and the same is hereby reversed.

CONREY, P. J., Concurring.—I concur in the judgment. There are two principal questions in the case. The first relates to the admissibility of testimony offered by defendant to prove that he was not legally obligated on the notes signed by him. The second relates to the validity of defendant's guaranty of his wife's notes, these notes having been outlawed at the time when the guaranty agreement of defendant was made.

The notes executed by defendant were promises to pay money, "in gold coin of the United States". Each note contained this further statement: "All amounts hereafter coming due to me from said Santa Ana Sugar Company are hereby assigned to it to be applied in payment of this note until it is fully paid." Defendant's answer admits that the moneys received by him were advances made to him for the purposes of planting and cultivation of his beets "Until the crop was ready for marketing, when the plaintiff would purchase such crop from the defendant". It is thus established that the oral evidence received by the court, to the effect that in certain contingencies the defendant would be excused from liability, was testimony received for the purpose of modifying the express provisions of the notes. The objections to such evidence should have been sustained.

The second question seems to be not very difficult, when one keeps in mind the fact that the notes given by defendant's wife had become outlawed *before* the guaranty agreement was made. This fact at once excludes such cases as *Anderson* v. *Shaffer,* 98 Cal. App. 457 [277 Pac. 185], which are authority for the proposition that where the obligation of the principal debtor has been allowed to expire by limitation *after* the time of making of the guarantor's promise, the creditor may not, under such circumstances, enforce the guaranty. But there is no rule or policy of law which should prevent one from entering into an agreement of guaranty of payment of a barred debt, where the guaranteed obligation is not itself tainted with any element of illegality.

I also agree with the conclusion that the evidence does not support the finding of the lower court that defendant was not competent to make the contracts, or the finding that they were made under duress.

HOUSER, J., Dissenting.—I dissent.' In the first action it appears that, based upon a proper pleading which was supported by sufficient evidence, the trial court made specific findings of fact which constituted fraud on the part of the plaintiff in inducing defendant to sign and to deliver physical possession of each of the instruments upon which such action was founded. In addition thereto, as expressly provided by the terms of section 3097 of the Civil Code, as between the immediate parties to a negotiable instrument, "the delivery may be shown *to have been conditional, or for a special purpose only,* and not for the purpose of transferring the property in the instrument". Numerous authorities fully support the conclusion that, having established either fraud in the inducement of the execution of the asserted instrument, or that no legal delivery thereof was either intended or had by its maker, no recovery of a judgment may be had on such instrument by its immediate payee.

As to the second action, since it appears that the assumed guarantee by the defendant of each of the promissory notes in question was made after an action on each of such notes was barred by the statute, it is clear to my mind that the attempted guarantee created no legal obligation in favor of the payee of either of such notes as against the *quasi* guarantor.