[Civ. No. 4957. Third Appellate District.—December 12, 1933.]

L. E. ELLINGTON, Appellant, v. PACIFIC COAST PULP AND PAPER CORPORATION (a Corporation), Respondent.

Raymond A. Leonard and Hubert Townsend for Appellant.

Wesley E. Marten for Respondent.

PLUMMER, J.—This action was begun to collect the sum of $2,000, based upon two promissory notes executed and delivered by the defendant to the appellant. One note was for the sum of $1,000, and one note for the sum of $1,040. While the notes sued upon are dated, respectively, September 21, 1931, and October 10, 1931, the record shows that they are renewal notes. The first notes issued by the defendant and delivered to the plaintiff appear to have been delivered on February 21, 1931, and on April 10, 1931. The dates of the renewal notes, which were subsequently merged into the notes dated September 21, and October 10, 1931, do not satisfactorily appear in the record. Sufficient to state, however, that the first note executed and delivered to the plaintiff was dated February 21, 1931. This note was signed by the president of the defendant corporation, and given in his individual capacity, and subsequently taken up, and a note signed by the corpora-

tion issued in lieu thereof. Both notes are unconditional promises to pay.

The answer of the respondent admitting the execution of the notes alleges that the two notes were really conditional notes; that at the time of the execution of the first note the plaintiff verbally promised to purchase certificates of stock in the defendant corporation, to the value of $10,000, and also, that an agreement would be executed by the defendant to the plaintiff whereby the plaintiff would be given the contract of hauling rice-straw, for the uses and purposes of the defendant. It is admitted that the agreement to purchase stock was oral and was not entered into in accordance with the terms of the Corporate Securities Act, or in accordance with the permits of the corporation that were offered in evidence. The permits shown in the record were not in force during the year 1931, nor at the time of the alleged agreement to purchase stock of the defendant corporation by the plaintiff, set up in defendant's answer.

In December, 1931, an agreement was entered into between the plaintiff and the defendant relative to the hauling of rice-straw by the plaintiff, for the uses and purposes of the defendant, for the period of two years, at $6 per ton, the hauling of the rice-straw to begin when the corporation was ready to operate its proposed pulp and paper manufacturing plant. The trial was had in December, 1932. So far as the record shows, the defendant has not completed its pulp and paper plant, and no part thereof has been placed in operation, and the agreement to deliver rice-straw has not come into operative effect.

At the trial of the action the defendant, over the objection of the plaintiff, was permitted to introduce a great deal of testimony relative to the oral agreement to purchase stock subsequent to the execution of the notes in question. No denial is made that the plaintiff advanced to the defendant the sum of $2,000, evidenced by the promissory notes, the contention being that the notes were given as security to the plaintiff that the contract to haul rice-straw would be awarded to him, and apparently also to evidence the fact that the plaintiff had advanced the sum of $2,000 on account of his oral promise to purchase $10,000 worth of the capital stock of the defendant corporation.

At the time of the execution and delivery of the promissory notes by the defendant to the plaintiff, of which the notes set up in the complaint are renewal notes, section' 12 of the Corporate Securities Act read as follows: "Every security issued by any company without a permit of the Commissioner authorizing the same, then in effect, shall be void, and every security issued by any company with the authorization of the Commissioner, but not conforming in its provisions to the provisions, if any, which it is required by the permit of the Commissioner to contain, shall be void." The permits to sell stock issued by the commissioner of corporations to the defendant required, among other things, that the agreement to purchase should be in writing, and that at least forty per cent of the value of subscribed capital stock should be paid in cash. In other words, that at the time of the oral agreement referred to in this action at the time of the issuance of the first note, in order to be a binding obligation between the plaintiff and the defendant, the agreement should have been in writing and $4,000 paid in cash.

Section 1607 of the Civil Code reads: "The consideration of a contract must be lawful within the meaning of section 1667." Section 1667 of the Civil Code provides that a contract is not lawful which is—"1. Contrary to an express provision of law. 2. Contrary to the policy of express law, though not expressly prohibited. Or, 3. Otherwise contrary to good morals." (*Teachout* v. *Bogy*, 175 Cal. 481 [166 Pac. 319].) The oral contract involved in this action is directly contrary to the express provisions of the law as it existed at the time of the execution of the notes, of which the notes set up in the complaint are renewals.

██ Renewal notes and original notes stand upon the same basis, from which it follows that the oral agreement alleged to have preceded the giving of the first note is not changed in its character or binding effect by any subsequent renewal notes, and the renewal notes being simply replacement of the original obligations, the conditions, if any which preceded the giving of the original notes are the only conditions which can affect the liability of respondent, and also, the admissibility of the evidence in relation thereto, for the simple reason that if the obligation had become fixed, the liability, if any, of the defendant could not be changed

by any oral promises or agreements occurring subsequent thereto. (*Imperial Livestock etc. Co.* v. *Tracy*, 208 Cal. 205 [281 Pac. 50].)

The findings of the court are, among other things, to the effect that on or about the twenty-first day of February, 1931, the plaintiff entered into a verbal contract with D. M. Thomson, president of the defendant corporation, to purchase $10,000 worth of stock, in consideration that the plaintiff be given an exclusive contract for hauling rice-straw for two years, and that on or about the twenty-first day of February, 1931, the plaintiff delivered to D. M. Thomson, as said president of the corporation, the sum of $1,000, to be applied on the purchase of said stock, and that as security for the execution of the contract to haul rice-straw, Thomson, as president of such corporation, delivered to the plaintiff a promissory note for the repayment of the $1,000. That thereafter, and in June, 1931, the plaintiff and the entire board of directors of the defendant corporation, met at its principal place of business and office of said corporation, in Richvale, California, and at such meeting the plaintiff agreed that he would either purchase $10,000 worth of the capital stock of said corporation, or $5,000 worth, if he, defendant, would give the plaintiff an exclusive contract for hauling rice-straw. If $10,000 of stock were purchased, the plaintiff was to have an official position with the corporation, but if only $5,000 worth of stock were purchased, the plaintiff was to have only the contract for hauling the rice-straw; and that subsequently, and on September 21, 1931, the defendant corporation executed and delivered to plaintiff the promissory note set out in paragraph II of the first cause of action mentioned in plaintiff's complaint; that at the same time it was further agreed orally, that the plaintiff would advance at least $2,000 additional to be applied upon his agreement to purchase stock.

It is further found that the plaintiff did advance an additional $1,000. The court also found that the agreement to purchase stock was voidable and not void, apparently basing this finding upon section 16 of the Corporate Securities Act which became effective on August 24, 1931.

Whatever may be said of the findings concerning the second promissory note, the finding of the court as to the first note is directly in contravention of the undisputed

writings in the record. A letter dated March 9, 1931, sent by the defendant to the plaintiff, reads as follows:

"L. E. Ellington.

"Monte Bello, Calif. Box #296.

"Dear Sir: At a Board meeting it was decided in order to simplify the issuance of stock certificates as security against the one thousand dollars ($1,000.00) loaned by you to Mr. D. M. Thomson, that the latter issue his personal note to you for the loan and also pass on to you to be held as security the eight units of stock of the Pacific Coast Pulp and Paper Corporation which shall be issued to Mr. Thomson for the money obtained from this loan. Please, therefore, return the company note given to you by Mr. Thomson for $1,000.00 to our auditor in the self-addressed stamped envelope at your earliest convenience. The stock will be forwarded to you to hold as security for said loan as soon as issued.

"For the financial accommodation extended we hereby agree to give you contract for the hauling of our straw for the period of two years at a price not to exceed $6.00 per ton delivered baled, you to make a lower price to us based on cost plus a reasonable profit to you if not baled. Adjusted cost to be determined by your detailed costs determined after a reasonable period of operation. This will serve as binding contract until we get together and draw a more detailed one.

"Your very truly,

"PACIFIC COAST PULP AND PAPER CORPORATION.

"By D. M. THOMSON, Pres."

On the same date a letter written by D. M. Thomson, president of the corporation, was sent to the plaintiff in this action. This letter refers to the company's note theretofore issued and delivered to the plaintiff, requesting its surrender and to be replaced by the note mentioned in the first letter set forth herein (which appears as "Plaintiff's Exhibit No. 4"), as follows:

"Hotel Oaks, Chico, California,

"March 9, 1931:

"Dear L. E.

"I enclose letter from the P. C. P. & P. Corp., which is self-explanatory. Please send the Company's note to the

auditor in addressed envelope in exchange for my note enclosed. I forgot whether the interest was 7% or 8%, the latter, I think. Will you please insert what was agreed upon. I enclose certificates duly endorsed by me as security for you. Please acknowledge safe receipt. The Company's letter guarantees the hauling to you for 2 years, till you come up, and then we will give you a regular contract, signed, not like Suckow's.

"I have been extremely busy, 11 & 12 p. m. every night, with the auditor, or would have written you before now, but I told Annie to phone you that everything looked very good. The auditor says the deal is assured; everything looks better at this date than ever it did. I am rushing to catch the mail. I shall write you more fully regarding everything the day the auditor leaves, which looks like to be Wednesday evening.

"With warmest regards to you and your good wife, and again, many thanks for your warm kindness and very practical assistance, which is greatly appreciated.

"Yours very truly,

"D. M. Thomson.

"Have you any news regarding Suckow? How is everything going?

"D. M. T."

On September 21, 1931, D. M. Thomson, the president of the corporation, wrote to the plaintiff as follows:

"Richvale, Calif., Sept. 21st, 1931.

"My Dear Ellington:

"I got back to the plant Saturday, and as promised, I enclose contract re baling & hauling; also our note for $1040.00. I just notice that by dating note today, one month's interest is not included, but this letter is & will be your authority to collect same at a future date, as soon as we are in funds. There is not much to report. Our agreement as I outlined it, is agreeable to the Board, and I hope when you and Mr. Newman come up about the end of this week, we can arrange matters to the satisfaction of all concerned. I called on the Commercial Credit Company of San Francisco, and they state they would be willing to consider a contract for the purchase of all our machinery under their usual terms for Industrial loans. So this is a very good move and a great help to us if we

have to use them. Dr. Lofgren had a long talk with Mabrey last Friday while in Sacramento, and it seems there is likely to be an agreement whereby Schwab will advance the loan by installments to complete the buildings as required. Schwab is coming up here with Mabrey in the next day or two to go over the matter, and I hope we can come to some definite plan to complete all the buildings without a halt. This would be a wonderful move for us, and I hope I can make it good.

"Yours,
"D. M. THOMSON."

The facts set forth in these letters, as we have stated, do not appear to be controverted. However, there is some testimony to the effect that when the plaintiff wanted some money stating the purposes for which he desired to use the same, that he orally promised to return the same to the. corporation.

The record further shows that the plaintiff had no knowledge of the terms or conditions of the permit issued by the corporation commissioner authorizing the sale of certificates of stock by the defendant prior to the 21st or 22d of June, 1931, at which time a copy of the permit and the conditions thereto attached, were sent by the defendant to the plaintiff.

In support of the judgment of the court and its findings that the oral agreement on the part of the plaintiff to purchase stock in the defendant corporation was not void, or only voidable, reliance is placed upon section 16 of the Corporate Securities Act as it appears in the act of the legislature approved May 26, 1931 (Stats. 1931, p. 949). That act provides, in substance, that securities issued by a company without a permit, or not in accordance with the terms and conditions of the permit, shall be voidable at the election of the holder thereof, unless within sixty days after written notice of such irregularity in the issuance of such security has been given to the commissioner, he shall issue a permit authorizing the issuance of all securities, etc. And providing, further, that if said permit is issued within said time, none of said securities shall be voidable by reason of being issued without a permit, or by reason of being issued otherwise than in conformity with the terms of the original permit. The contention being that it is in-

cumbent upon the purchaser under such circumstances to give notice to the commissioner, etc. We cannot agree with any such construction of the statute. It is the duty of the corporation to see that its permits are properly issued, and that its sales of stock are in accordance with the conditions, and upon discovery of any irregularity it may, by giving notice to the commissioner, place itself in the position where such securities may be held valid if the commissioner, by his permit, so authorizes the issuance of the stock and the conditions under which the same may have been issued. The corporation is the custodian of the permits issued by the commissioner, has control of its own records, and is the one for whose benefit the amendment to the permit and the correction of the conditions for the sale of stock may be made. ■ However, the oral agreements for the purchase of stock were all made prior to the date of section 16 of the Corporate Securities Act becoming effective. The agreement for the hauling of rice-straw, which bears date of December 21, 1931, denominated the final consummation of the transaction, contains no reference to the purchase of stock, and upon its face includes the agreement between the parties so far as the hauling of rice-straw is concerned, and it cannot be aided by any invalid agreement relative to the sale of stock.

■ That an agreement for the purchase of stock, contrary to section 12 of the Corporate Securities Act as it read at the time of the transactions referred to herein, is void, is expressly held in the case of *Walker* v. *Harbor Realty Co.*, 214 Cal. 46 [3 Pac. (2d) 557]. In this case it is likewise held that the purchaser is not *in pari delicto* with the corporation. The act was held to be for the benefit of purchasers and not for the benefit of the corporation selling stock.

To the same effect is the case of *Pollak* v. *Staunton*, 210 Cal. 656 [239 Pac. 26]. These cases hold that the purchaser is entitled to recover any moneys paid by him.

In the case of *Teachout* v. *Bogy, supra,* it is further held: "If any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void". This is simply a reiteration of section 1608 of the Civil Code.

The circumstances involved in the case of *Domenigoni* v. *Imperial Livestock Co.,* 189 Cal. 467 [209 Pac. 36], relied upon by the respondent as showing the purchaser of stock *in pari delicto* with the seller in contravention of a corporation permit, are readily distinguishable from the circumstances involved in the instant case, as in the instant case there is no issue that the plaintiff knew anything about the permits or conditions attached thereto, at the time that the original notes were issued. The Domenigoni case, *supra,* sets forth circumstances showing that the purchaser connived with the seller to circumvent the Corporate Securities Act. Nothing of that kind appears in the record which we are now considering.

Likewise, in the case of *Michell* v. *Grass Valley Gold Mines Co.,* 206 Cal. 610 [275 Pac. 418], the parties seeking to avoid the illegal issue of stock were directors of the corporation and participated in the issuance thereof.

While the record shows the date of February 21, 1931, when the first loan, as claimed by the plaintiff, of $1,000 was made to the defendant, and a promissory note given therefor, we fail to find in the record any evidence of the exact date when the second promissory note was given, upon the plaintiff loaning to the defendant an additional $1,000. One of the renewal notes set forth the sum of $1,040, the $40 being added as interest accruing as of the date of the renewal note.

Over the objection of the plaintiff the defendant was allowed to introduce testimony of the witnesses Thomson, Lofgren, Marten, Grell and Lundberg, of an oral agreement to purchase stock subsequent to the execution of the notes in question, for the purpose of showing that the notes were conditional and not binding obligations. How much of this testimony was subsequent to the execution of the note evidencing the advancement of the second $1,000 cannot be ascertained from the record, but it does satisfactorily appear that the witnesses we have named were allowed to testify to oral conversations and agreements occurring several months after the advancement of the first $1,000 and the execution of the note dated February 21, 1931.

In addition to what we have stated the defendant was allowed to introduce in evidence, without any foundation having been laid therefor, a certain letter dated May 10,

1932, written by the president of the corporation to an attorney by the name of Walter H. Moses, reiterating the substance of the oral agreement to purchase stock by the plaintiff in consideration of his being given the contract to haul the rice-straw, as theretofore testified to by himself and other witnesses we have named. This letter, of course, is in direct contravention of the letters dated March 9, 1931, written by the same person, and heretofore set out in this opinion.

■ That a note apparently binding in its terms may be shown to have been conditionally delivered is permissible under the provisions of section 3097 of the Civil Code and is supported by the following cases: *Silva* v. *Gordo,* 65 Cal. App. 486 [224 Pac. 757]; *Richardson* v. *Lamp,* 209 Cal. 668 [290 Pac. 14], and cases there cited. These conditions may be shown by oral testimony, but the conditions must either be precedent or concurrent with the delivery of the note. Subsequent oral agreements cannot be admitted for the purpose of establishing the fact of a conditional delivery. (*Santa Ana Sugar Co.* v. *Smith,* 116 Cal. App. 422 [2 Pac. (2d) 866].) ■ Thus, conversations between the plaintiff and some of the witnesses taking place during the month of June, 1931, were wholly inadmissible for the purpose of showing the conditional delivery of the note made, executed and manually delivered on February 21, 1931. It may be mentioned that the letters set forth herein, written by the president of the corporation, mentioning the delivery of the notes and renewal notes, contain nothing indicating conditional deliveries.

The complaint in this action makes no offer to surrender to the corporation the agreement relative to the hauling of rice-straw, nor does the cross-complaint filed by the defendant ask for the cancellation of such agreement. Whether the consideration for the execution of the agreement which we have just mentioned has failed, is not involved in this action. While there is a statement in the testimony of the president of the corporation that he told the plaintiff the contract for hauling the rice-straw would be a valuable contract, there is no evidence in the record to substantiate such statement. It simply appears that the plaintiff according to the contract, was to receive $6 a ton for baling and hauling rice-straw. The expense of baling

and hauling is not set forth. Nor is there anything in the record from which the value of the $10,000 worth of stock testified to have been orally agreed to be purchased by the plaintiff, can be determined.

While we have considered only the testimony on the part of the defendant in this action as to whether the findings are supported and the judgment is correct, we may state that the plaintiff testified that he never agreed to buy any of the capital stock of the corporation; that he loaned the money and received the notes therefor.

Other cases might be cited to support the rules of law which we have set forth herein, but they would only be cumulative.

It follows from what we have said that the judgment of the trial court should be reversed. And it is so ordered.

The appeal from the order denying a new trial is dismissed.

Thompson, J., and Pullen, P. J., concurred.