[Civ. No. 6356. Third Appellate District.—January 10, 1940.]

ROBERT A. STEVENSON, Respondent, v. PAULINE B. STEVENSON et al., Appellants.

W. H. Stammer and Douglas A. May for Appellants.

B. M. Benson for Respondent.

PULLEN, P. J.—This appeal is from a judgment setting aside a property settlement on the ground that it was executed by Robert A. Stevenson because of threats made against him by appellant Arthur M. Steintorf pursuant to a conspiracy between appellants.

Appellants contend the evidence was insufficient to justify the finding that respondent executed the property settlement and conveyance because of fear, duress, coercion or menace, or that appellants conspired to get the property of respondent, a divorce decree issued by the courts of Nevada is also questioned, but our conclusions as to the other points make a consideration of the latter question unnecessary.

The facts before the trial court reveal that Robert A. Stevenson and Pauline Stevenson were married in Tia Juana, Mexico, on June 18, 1929. After their marriage they moved to a four-room ranch house on their property in the San Joaquin Valley, where they lived, and with them lived an uncle of Stevenson. During the next eight years they accumulated by their joint efforts real and personal property of some $200,000. Although within a year after their marriage there was some element of dissension, nevertheless, they lived together, Pauline caring for Stevenson and his uncle and assisted in the building up of their properties, and they apparently treated each other with respect and consideration, and even now Stevenson has not charged his wife as being the cause of the separation which occurred in May, 1937.

On an adjoining ranch lived Arthur Steintorf and his wife Frances, and the two families became friends and visited back and forth as good neighbors. This friendly relationship continued until 1936, when respondent seemed to become indifferent toward his wife Pauline, and about the middle of May, 1937, suggested that she take a trip to Mexico, and that

he would go to Pennsylvania to visit his sister. Pauline went to Mexico and remained until August 8, 1937. During this time it is apparent Stevenson planned upon a divorce. In June he went to Tia Juana, Mexico, and there secured a certified copy of the marriage certificate evidencing his marriage to Pauline. On July 16th, he wrote Pauline in Mexico City enclosing the certified copy of their Mexican marriage and suggesting that it would be a simple matter for her to obtain a divorce in Mexico.

During this time the domestic affairs of Arthur and Frances Steintorf had not been progressing smoothly; in fact, it is in evidence that for several years they had not been happily married. On July 15, 1937, Frances told Steintorf she wanted a divorce and a property settlement, and a few days thereafter a property settlement between the two was entered into and Frances immediately left her home and went to Alameda, never to return to him again. During the five or six days intervening between her going to Alameda and Stevenson's trip to the east, they met almost daily, riding and dining together in the company, however, of a woman friend of Mrs. Steintorf. On July 27th, Stevenson started on his trip to the east.

About this time Steintorf learned that his wife Frances and Stevenson were interested in each other. He called upon his wife in Alameda on July 30th, and objected to Stevenson paying her so much attention and demanded that she get a divorce, or if she did not, he would. It was also about this time that Steintorf made threats against Stevenson to some of their mutual friends, which will be more particularly referred to later. Upon learning of these threats, Mrs. Steintorf telephoned to Stevenson in New Orleans, telling him of the threats and gossip that was going around concerning herself and Stevenson. Stevenson immediately returned by airplane, arriving in Oakland August 2d, where he was met by Mrs. Steintorf and a friend of hers. The next day Stevenson suggested going to the home of Steintorf and talk matters over, but was dissuaded from that course, and after going to Fresno and withdrawing his money from the bank he resumed his trip to Pennsylvania.

During all of this time Pauline was in Mexico City, ignorant of all that had been transpiring in California during her

absence. About July 31st, however, Steintorf wrote to Pauline Stevenson, telling her that Stevenson and Frances Steintorf were in love with each other and intended to be married. On August 8th, Pauline returned to California. She was met in Los Angeles by Steintorf and two of her friends, a Mr. and Mrs. Britton. On August 10th, she went to Fresno, and was taken by Steintorf to the office of Mr. May, an attorney in that city, and an action for divorce was filed, in which she alleged certain acts of mental cruelty, and asked for one-half of their community property. An order was also issued restraining the defendant therein, Stevenson, from encumbering or transferring any of the property, which restraining order was served by Steintorf upon Stevenson's ranch manager. Steintorf then left Fresno County on a hunting trip near Santa Maria, and did not return until August 20th, when he went to his ranch near Firebaugh.

On August 17th, Stevenson returned from his eastern trip, and employed Mr. Powell, an attorney of San Francisco, to advise him with reference to the divorce proceedings. By appointment, Mrs. Stevenson and her attorney, Mr. May, met with Stevenson and his attorney, Mr. Powell, in San Francisco. In these conferences Mr. Stevenson insisted upon a dismissal of the divorce proceedings pending in Fresno County before he would discuss any property settlement. This, Mrs. Stevenson, upon the advice of her attorney, refused to do. They then returned to Fresno where a property settlement agreement, prepared by Mr. Guntner, acting apparently for Mr. Stevenson, and Mr. May, was executed. That agreement, the basis of this litigation, transferred to Mrs. Stevenson, the ranch, worth $140,000, upon which was growing a cotton crop, which netted approximately $30,000 and $20,500 in cash in various banks. Property worth approximately $34,000 was transferred to Stevenson. The divorce action filed in Fresno was then dismissed.

On August 25th, Pauline left for Reno, after giving to her mother the furniture in her home, and arranged with the ranch manager to remain at an increased salary. She made the trip to Reno by automobile with Mr. and Mrs. Britton, Mr. Steintorf and a Mr. Murray,—the latter four having planned to go to Klamath Falls on a fishing trip, but later changed their plans and went to Pyramid Lake, leaving Mrs.

Stevenson in Reno, where she established a residence, and on October 8th, was granted a divorce from Stevenson.

On September 24th, Stevenson met Pauline in Reno, and with her attorney discussed their contemplated divorce. While in Nevada, Stevenson employed an attorney to represent him at the divorce hearing and executed a power of attorney in order to expedite the matter. On the day before the matter was to be heard, Stevenson and his attorney and Mrs. Stevenson and her attorney met and discussed several matters, including the property settlement, and also at that time Mrs. Stevenson renewed in writing a promise she had theretofore made to pay to the uncle of Stevenson the sum of $100 each month as long as she was financially able so to do. Upon the hearing, Mrs. Stevenson and her attorney were present as was the attorney for Stevenson. The property settlement was, without objection, introduced in evidence, and a decree was entered granting the divorce, and affirming the settlement.

At no time had Stevenson asked for a return of any of the property conveyed by the settlement to Mrs. Stevenson, and no return was asked until a demand was served upon her on December 20, 1937, and at that time it was not suggested that the property settlement had been procured because of fear of any threats. It was asserted by Mrs. Stevenson, and not denied by Stevenson, that on more than one occasion she objected to taking more than one-half of their property, and offered to return to him one-half thereof, which offer he refused. It is quite apparent and not denied, that Stevenson was anxious to convey to Mrs. Stevenson practically all of his property to get it beyond the power of Steintorf to levy upon in an action for alienating the affections of Mrs. Steintorf. The property was not reconveyed, and on January 15, 1938, this action was commenced.

In the meantime, Frances Steintorf had established a residence in Nevada, and on November 4th, she and Steintorf were divorced. On that day Stevenson met her in Reno and accompanied her back to Fresno County. On November 28, 1937, Pauline Stevenson and Arthur Steintorf were married in the county of Fresno.

Upon the foregoing facts the trial court found the existence of a conspiracy, and further that the property settle-

ment of August 20, 1937, had been obtained solely by reason of threats, menace and duress, and, among other things, set aside the property settlement, and decreed that all of the property accumulated while the parties were living in good faith as husband and wife, should be divided equally between them, and that an accounting and a partition of all the property be had.

Appellants now contend that the evidence is insufficient to show that respondent executed the property settlement because of menace; that the record fails to show that Pauline Stevenson conspired to get any of respondent's property, and that the property settlement had been ratified by respondent. Respondent devotes considerable effort to establish that the courts of Nevada acquired no jurisdiction over the parties in the divorce proceeding in *Stevenson* v. *Stevenson*, but our conclusions make it unnecessary to consider the validity of that decree.

The court found that some time in 1937 Steintorf and Pauline Stevenson conspired to cause the wife of Steintorf, Frances M. Steintorf, to go to Reno to obtain a divorce from Steintorf, and that Pauline Stevenson should likewise go to Reno and obtain a divorce in order that Steintorf and Pauline Stevenson could marry, and also by means of threats, duress and coercion these two conspired, so it is found, to get the property of plaintiff Stevenson. Three specific instances of such threats are alleged in the complaint and found to have been made and communicated to plaintiff, prior to the execution of the property settlement in question. They are, first, a statement to Mrs. Fourchy on July 31, 1937, where Steintorf is found to have said: "I brought my gun along up here with me and if that son-of-a-bitch were here I would shoot him in cold blood and kick him in the face," and "I am living for one thing alone, that is to get even." Also the statement made by Steintorf to Seaman Malm, on August 5th, when he said to him: "Seaman, I am out to ruin Bob and after I do it I'm going to kill the son-of-a-bitch; I am carrying a gun just for this purpose," and about August 15, 1937, Steintorf, speaking to Charles Snyder, said: "Charlie, I am out to ruin Bob and no holds are barred."

It is also alleged, and found to be true, that these threats were made shortly before the execution of the property set-

tlement, and were conveyed to Stevenson, and that he entered into the settlement solely under fear, duress and coercion, inspired by these threats.

As bearing upon the fear of plaintiff we find that upon being informed by long distance telephone while in New Orleans of such threats he immediately returned to Oakland where he met Mrs. Steintorf. A day or so following his arrival in Oakland, and after hearing of the threats made by Steintorf against him, and telling a friend, Mr. Murray, that he was going to Fresno to meet Steintorf and talk things over, he went to Fresno, drew his money out of the bank and returned to Oakland, and then resumed his trip to the east. On August 17th, he returned to California, and the next day went to Fresno, and was at his ranch, adjoining the ranch of Steintorf, and in Fresno many times after that. Some months later he and Steintorf met in Reno, and plaintiff struck Steintorf, and again at a subsequent date, he walked up to Steintorf who was seated in a cafe, and again struck him. These facts are not disputed, and would indicate that plaintiff was not afraid of any physical violence from Steintorf.

There is nothing in this record indicating that Stevenson sought any protection from the threats of Steintorf, and it is quite plain, aside from the bare assertion that he was afraid of Steintorf, there is nothing to indicate he was. Neither is there anything in the threats nor in the communication of such threats to Stevenson that they were designed or intended to secure a transfer of any property to Pauline, nor was she connected in any way with the threats.

It is a well-established rule that evidence relied on to establish a defense of duress must establish the fact with reasonable certainty by clear, cogent and convincing evidence. (13 Cor. Jur. 779; *Keck* v. *Wingert,* 132 Cal. App. 475 [23 Pac. (2d) 99].)

As to the conspiracy between Steintorf and Mrs. Stevenson, we can find no evidence to indicate any such relationship. Mrs. Stevenson was in Mexico City until August 8, 1937. The only conversation during that time between Steintorf and Mrs. Stevenson was when he wrote her of the relations between Stevenson and Mrs. Steintorf. She then started back to California. It will be recalled that the

first threat that Steintorf is alleged to have made against Stevenson was on July 31st, the second one on August 1st, and the third on August 15th. About August 9th, Pauline Stevenson was taken to the office of Douglas May, an attorney of Fresno, by Steintorf. There, May prepared a divorce complaint in which Pauline Stevenson was plaintiff and in which she asked the court to award to her one-half of the community property. Upon the insistence of Stevenson the action was dismissed after he had signed the property agreement here in question. Prior to the agreement having been signed, Stevenson never told Pauline that Steintorf had made any threats against him. Prior to the execution of the agreement, Pauline told Stevenson, when he told her he was going to give it all to her, that such a division would be unfair, and he then said, "Well, just don't mention it to anybody, that is between the two of us."

On August 18th, Stevenson and his attorney, Mr. Powell, were in San Francisco, preparing a property settlement. Mrs. Pauline Stevenson and her attorney, Mr. May, met with them; Mr. May refused to dismiss the divorce action filed by Mrs. Stevenson in Fresno County, and Stevenson refused to negotiate. On August 20th, Stevenson asked Mrs. Stevenson to meet him in the office of his attorney and tax advisor, Mr. Guntner, in Fresno. Mrs. Stevenson called upon Mr. May and they met Mr. Stevenson and Mr. Guntner. There the agreement in question was finally executed. At that time Stevenson insisted upon conveying to Pauline all of his property, but she refused to accept the pump station, upon which his mother resided, as well as two automobiles and certain life insurance policies. During these negotiations Steintorf was on a hunting trip and did not return to Fresno County until after this agreement had been executed.

After this settlement had been signed Stevenson invited Mrs. Stevenson, Mr. May, her attorney, and Mr. Guntner to accompany him to a restaurant where they all had dinner. No attempt was made to recover any of his property until after Pauline Stevenson and Steintorf had announced their proposed marriage. He then sent Charles Snyder to Pauline to ask her if she would still live up to her agreement, that is, that she would reconvey one-half of the property back to him upon demand. She replied that all of her property

was then tied up. The next demand was after the marriage of Pauline and Steintorf in December, when he called upon Mr. May and told him he had given up the property to avoid a scandal, and if all of the property was not returned to him he would create a scandal.

On December 20, 1937, just prior to the filing of this action, a written demand was made for the return of the property, not claiming menace or conspiracy, but threatening to set aside the Nevada divorce decrees of Pauline Stevenson and Frances Steintorf. All of the foregoing facts are undisputed.

As was said in *Fernandez* v. *Cano*, (Tex. Civ. App.) 108 S. W. (2d) 310, in reversing a judgment based upon conspiracy upon the grounds of insufficiency of the evidence: "We are aware of the rule which requires us to indulge in every reasonable presumption in favor of the findings of the trial court, and that any doubts as to the facts raised by the evidence, and any view of the law which the court could have applied under the pleading and the evidence, will be resolved in support of the judgment. On the other hand . . . a person seeking to establish conspiracy and fraud must do so by full, clear and satisfactory proof." We cannot here find that degree of proof.

Quite obviously the property was conveyed to Pauline not because of fear or coercion but to prevent Steintorf from reaching any assets in case of a suit for alienation of affection of his wife, Frances, by Stevenson.

Steintorf had apparently threatened to sue Stevenson for damages for alienating the affections of his wife Frances. Respondent admits of having heard of these threats, as is evidenced by the following testimony given by him: "Q. Now you knew prior to entering into this property settlement that Arthur Steintorf had threatened to sue you for alienation of affection, didn't you? A. Well, there were two things that were—the air was full of them,—and one was the alienation of affection, but the most prominent was he threatened my life. Q. But you did hear that he threatened to sue you for alienation of affection, didn't you? A. That was the general rumor, yes. Q. You had heard of it? A. I had heard the rumor." Under these circumstances a threat to institute a damage action did not constitute menace.

(*Lyon* v. *Lyon*, 70 Cal. App. 607 [233 Pac. 988]; *Silber-schmidt* v. *Moran*, 79 Cal. App. 533 [250 Pac. 205]; *Santa Ana Sugar Co.* v. *Smith*, 116 Cal. App. 422 [2 Pac. (2d) 866].)

 Furthermore, if Stevenson conveyed any part of his property to Pauline to delay or defraud a writ of execution in an alienation of affection suit, he cannot, in this equitable proceeding, recover that property. (Pomeroy's Eq. Jur., vol. 1, p. 738; 10 Cal. Jur. 515.)

It seems clear that the evidence fails to show that Stevenson executed the property settlement because of menace, or that Pauline Stevenson ever knew of any threats against the life of Stevenson or conspired to take any of respondent's property. The judgment is reversed.

Thompson, J., and Tuttle, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 8, 1940.