## MIFFLIN v. CUNNINGHAM et al.
### No. 7336.

Circuit Court of Appeals, Ninth Circuit.
Feb. 19, 1936.

William Thomas, Louis S. Beedy, George J. Presley, and J. W. Paramore, all of San Francisco, Cal., for appellant.

Leo A. Cunningham, of San Francisco, Cal., for appellees.

Before WILBUR, DENMAN, and HANEY, Circuit Judges.

WILBUR, Circuit Judge.

This action involves the ownership of funds, amounting to about $20,000, under the control of C. J. Owens and L. Spilman, derived from monthly payments of $5 each paid by the members of the Decimo Club, Inc., who were also holders of certificates of participation issued by the Decimo Trust of America, a business trust, whose trustees are parties hereto. The suit was brought by the receiver of the Decimo Club, Inc., and involves the conflicting claims of the Decimo Club, Inc., of the Decimo Trust of America, and of the various members of the Decimo Club, Inc., who were certificate holders of the Decimo Trust and who paid in the funds and who are represented in the suit by Leo A. Cunningham and others.

The trial court held that the fund belonged to the members who had paid in the money, subject to the expenses of administration properly deductible therefrom, the amount of such deductions to be determined by the trial court in the final order for distribution. Appeal is taken by the receiver from this decree.

The Decimo Club, Inc., was a fraternal organization whose members agreed to pay an initiation fee of $25 and dues of $5 per month. The officers of this club embarked upon certain business enterprises, the nature of which is not disclosed by the record, in addition to their functions as officers of a fraternal and benevolent association. See Southerland v. Decimo Club, Inc., 16 Del.Ch. 183, 142 A. 786. It was believed by those concerned that the Decimo Club, Inc., was exceeding its corporate powers and for that reason the officers

of the Decimo Club, Inc., which we will hereinafter refer to as the Club, organized the Decimo Trust of America, hereinafter referred to as the Trust, for the purpose of taking over the business activities of the Club.

It was agreed that participation certificates in the Trust should be issued by the Trust to the members of the Club and that the dues of $5 per month thereafter contributed by the members of the Club should be paid to the Trust and that $2 thereof each month should be paid to the Club by the Trust, the plan being to have the Club continue its activities as a beneficial association and the Trust to take over and operate the business activities of the Club and under the name of the Trust and for the benefit of the holders of the participation certificates.

C. J. Owens and L. Spilman were appointed agents of the Trust for the collection of dues. They collected the monthly dues from the members from and after March, 1928, to and including June 20, 1928. The Trust issued certificates to some of the members of the Club, but not to all of them. The right of the Trust to issue such certificates was questioned by the Corporation Commissioner of the state of California charged with the enforcement of the California Corporate Securities Act, otherwise known as the Blue Sky Law, and for that reason the funds collected by C. J. Owens and L. Spilman were retained by them and deposited in California banks pending the determination of the question as to whether or not a permit should be granted to the Trust to issue and sell its certificates in the state of California.

The trial court found that the impounding of these sums in the California banks was in pursuance of the express requirement of the Corporation Commissioner that such funds be so impounded. C. J. Owens testified that these funds were collected by him and L. Spilman under an express agreement that the said amounts so collected would be returned to the members who had paid the same in the event the Trust was unable to secure the authority of the Corporation Commissioner for the issuance of said certificates.

The trial court did not expressly find that the membership dues were deposited in pursuance of the agreement to return the same in the event that the Corporation Commissioner failed or refused to issue his permit, as alleged, but it did find that no such permit was obtained, and that the funds so collected and impounded belonged to the members who had paid the same and should be returned to them. It held that the issuance of the participation certificates without any permit was a violation of the California Corporate Securities Act.

The testimony that this money was deposited under express agreement to return the same in the event that the Corporation Commissioner failed to authorize the issuance of the certificates would sustain the conclusion of the trial judge as to the equitable ownership of the funds.

■ We are not concerned with the question as to whether or not the Corporate Securities Act of the State of California required the issuance of a permit by the Corporation Commissioner before the issuance of the participating certificates, although it seems fairly clear that such is the law of California. California Corporate Securities Act, § 2, subds. 3, 4, 7, §§ 3, 4, 9, 12. Cal.St.1917, pp. 673, 675, 678, 679, as amended. Nor are we necessarily concerned with the relative rights of the Trust and of the members who had made the payments upon the theory that the participating certificates were issued in violation of the California Securities Act, or with appellant's contention that both parties to the transaction were in pari delicto, although the courts of California have held otherwise. Gillis v. Pan American Western Petroleum Co., 44 P.(2d) 311, decided April, 1935, Supreme Court of California; Holmquist v. Kent, 219 Cal. 231, 25 P. (2d) 977; Ramirez v. Thomas Productions, Ltd., et al. (Cal.App.) 51 P.(2d) 895, decided Nov., 1935; Randall v. California Land Buyers Syndicate, 217 Cal. 594, 20 P.(2d) 331; Ellington v. Pacific Coast Pulp & Paper Corp., 135 Cal.App. 703, 28 P.(2d) 404, decided December, 1933. For, according to the testimony accepted by the trial court, the money was paid under an express agreement that it should not be turned over to the Trust in payment for participating certificates until those certificates were approved by the Corporation Commissioner, and under this agreement the agents who collected the funds for the Trust were, by their consent, made special trustees to hold such funds for the members rather than for the Trust. It is sufficient for the purpose of this case to say that the California Corpo—

ration Commissioner claimed that the participating certificates were void until approved by him; that this situation was understood by the members and by the collecting agents and that a special agreement was entered into for the return of the funds in the event the consent of the Corporation Commissioner was not secured. Therefore, it is evident that the question of whether or not the Club or the Trust, through its trustees, authorized or directed the collecting agents to make such an agreement is immaterial, for they secured the funds by making this agreement to refund the same if the Corporation Commissioner failed or refused to grant a permit. Whether they were authorized to make the agreement or not, they held the funds under that agreement and because of it, and they were not authorized to turn the funds over to the Trust or to the Club without the consent of those who had paid the funds. This consent was conditional upon the securing of a permit which was not produced.

Appellant contends that these findings of the court were not only outside the issue but also were in direct conflict with the admissions of the parties in the pleadings. There is some merit in this contention, for it is admitted by the members that they were members of the Club and certificate holders in the Trust, and that the money was paid by them in pursuance of the Trust agreement. We think, however, that the allegations of the members to the effect that these moneys were impounded at the direction of the Corporation Commissioner to await his action, qualifies the admission that the money was paid in by them as certificate holders in the Trust. It is clear from their pleadings that the members claimed that the funds should be returned to them because of the fact that the Trust was never authorized to act in California or to issue participating certificates.

The appellant objected to the testimony of the witness Owens, one of the agents who collected the money, in answer to the question, "Was it at the order of the Corporation Commissioner's Office that these funds were impounded, or not?" He answered, "Yes," but upon further examination as to his knowledge of the impounding order he testified that he was told of it by the board of governors of the local chapter of the Decimo Club, Inc., and that he was told by this board that such a permit had not issued and that all sums collected upon the certificates would be impounded and must be returned to the members if a permit to sell new memberships was not received. While this evidence was not competent to prove that the Corporation Commissioner had made such an order, except, perhaps, as an admission of the Club, it was proper preliminary testimony in connection with his evidence that he thereafter, in pursuance of these representations, informed those members who were paying dues that the money would be so impounded and would be so returned. It may be conceded that no such order was made by the Corporation Commissioner. As we have pointed out, the critical question is not whether or not the Corporation Commissioner had so acted, or whether he was authorized so to do, or whether the certificates issued were void, but whether such representations and agreements were made in connection with the payments of dues by the members, as constituted the recipients the agents of the members rather than of the Trust or the Club.

The fact that these funds were actually impounded in the banks of California and were not turned over to the national authority of the Club or of the Trust strongly tends to support the testimony of these witnesses which was accepted by the trial judge. In addition we may add that apparently a quo warranto action was pending in the state of New Jersey to forfeit the charter of the Club because of its unauthorized business activity. Southerland, Attorney General ex rel. Snider v. Decimo Club, Inc., 16 Del.Ch. 183, 142 A. 786. Another action was pending in the courts of Illinois for the termination of the Trust on the ground that it was incapable of operating, and a third action was pending in the superior court of the state of California for the city of Los Angeles, brought by the members to recover funds contributed by them. All these actions were determined adversely to the contention of the Club, and the Trust.

In Southerland ex rel. Snider v. Decimo Club, Inc., supra, by decree ordered July 9, 1928, the charter of the Club was declared forfeited. By the decree of the United States District Court for the Northern District of Illinois, Eastern Division, the Trust was dissolved on the ground that it had never been fully organized; it decreed that the moneys in the hands

of the trustees of the Trust constituted a resulting trust in favor of those who had paid in the money and that the money so paid in should be distributed to the members. This action was a class action in which the appellant, as receiver, was a party, but the fund in California was not disposed of by that court because it was thought that such money had already been returned to the members in California. It is not contended that the decree of the Illinois court was binding on the parties hereto and we therefore do not discuss that question further.

It is admitted that the Decimo Club, Inc., is insolvent and that its creditors have not been and cannot be paid, and that the fund in California, if turned over to the Club, could properly be used for such obligations. But in view of the special agreement under which the money was paid by the members, it is clear that the equities in the matter are in favor of the members.

Decree affirmed.